# Jenks *v.* Terrell, Adm'r.

*Settlement of Administration on Decedent's Estate in Probate Court.*

1. *Settlement of administrator's accounts; when he is not chargeable with personal property converted by the widow.*—On settlement of his administration, an administrator is not chargeable with the value of personal property belonging to his intestate at the time of his death, which was taken possession of, and converted by the widow before the grant of administration, and which he made no effort to recover, when the value of the property was less than the amount exempt to her and minor children under the statute of force at the time of the intestate's death.

2. *Rent of plantation connected with decedent's dwelling; when administrator not liable for.*—Until dower is assigned, the widow is entitled to

[Jenks v. Terrell, Adm'r.]

the possession of the plantation connected with the dwelling in which the deceased husband resided at the time of his death, and to the rents issuing therefrom; and hence, the administrator is not chargeable with such rents, when he has not been guilty of laches in having dower assigned.

3. *Sale of land by administrator; when widow can not claim part of proceeds in lieu of dower.*—On a sale of a decedent's lands by the administrator under an order of the probate court, the court has no authority to decree the widow compensation in lieu of dower out of the proceeds of the sale, when she did not file her consent in writing before the sale, that her dower might be sold wth the reversion.

4. *Credit claimed by administrator on settlement; burden and degree of proof, when contested.*—When an administrator claims a credit, on settlement of his administration, for moneys expended by him in the payment of a debt claimed to have been contracted or incurred by his intestate, the burden of proving the debt, if contested, rests on him, and he must prove it by the same degree of evidence the creditor would have been compelled to produce, if he had been forced to an action for its recovery; and he must also prove the fact of its payment, if that fact be put in issue.

5. *General objection to evidence; when properly overruled.*—A general objection to the admissibility of evidence ought not to be entertained, unless the whole evidence to which it is directed, is inadmissible; and hence, it is properly overruled, when part of the evidence is admissible.

6. *When administrator may reimburse widow for debts paid by her.*—If the widow, before a grant of administration on her deceased husband's estate, pay debts which are just and subsisting demands against the estate, and which a rightful representative ought to have paid, she is entitled to stand in the place of the creditor or creditors to whom the payments were made; and an administrator, subsequently appointed, is entitled to a credit, on settlement of his accounts, for moneys expended by him in reimbursing her for the amounts so paid by her.

7. *Proof of receipt attested by subscribing witness; how made.*—The attesting witness to a receipt offered in evidence must be called, or his absence accounted for, before other evidence of its execution is admissible.

APPEAL from Talladega Probate Court.

Tried before Hon. WM. H. THORNTON.

In the matter of the final settlement of the administration of William S. Terrell upon the estate of Joseph Jenks, deceased.

Joseph Jenks, the decedent, departed this life intestate on 13th January, 1874, seized and possessed of real and personal property, and leaving surviving him his widow, E. J. Jenks, who afterwards intermarried with one Wm. Breedlove, and several children, some of whom were minors of tender years; and on or about 20th August, 1880, William S. Terrell was appointed the administrator of said estate by the said probate court. The personal property belonging to the decedent at the time of his death, consisting of household and kitchen furniture, corn, horses and cattle, of the value of less than $1000, went into the possession of, and was used and converted by the widow, long prior to the grant of administration. The administrator made no effort to recover this property, or its value. On 2d September, 1880, the administrator filed in said court

[Jenks v. Terrell, Adm'r.]

his petition for a sale of the lands belonging to said decedent for division among the heirs; and on 22d November, 1880, an order was duly entered, authorizing the sale of the lands for the purpose stated in the petition, under which they were sold on 21st December, 1880, for the sum of $1800, one-half cash, and the balance on a credit of twelve months, with interest from date. The sale was reported to, and confirmed by the court, and afterwards, the purchase-money having been fully paid, title was made to the purchaser under the order of the court. The administrator having filed his accounts and vouchers for a final settlement of his administration, the settlement was had, and distribution decreed, on 3d August, 1882; and from the decree rendered on that settlement this appeal was taken.

The purchase-money for the land sold by the administrator was the only item of debit on his account; and among the credits claimed by him were, (1) an "amount allowed the widow of decedent by the probate court in lieu of dower," $250; and (2) an amount "paid over to the widow for moneys expended by her in payment of the debts of the deceased," $1011.48. On the settlement, James H. Jenks, one of the heirs and distributees, moved to charge the administrator (1) with the value of the personal property owned by the decedent at the time of his death, and which went into the possession of, and was used and converted by the widow, as above stated; (2) with the rent of said lands for the year, 1880; and (3) with $200 alleged to have been paid to the administrator by the purchaser of the lands, as part of the purchase-money, not reported or accounted for by the administrator. It appears from the evidence set forth in the bill of exceptions, that the lands sold consisted of a plantation on which the decedent and his family resided at the time of his death; that after his death she took possession, and continued therein until the lands were sold, cultivating them herself for the two years next after her husband's death, and renting them out for the balance of the time, receiving and using the rents, as she testified, in supporting herself and her minor children; and that, not being satisfied with the amount for which the lands were sold, the widow objected to the sale, and threatened to contest it, when the purchaser offered to pay, and did pay her, through the administrator, $200, she executing to the administrator a receipt therefor, to be accounted for "on final settlement between him and myself." It does not appear that the widow filed in court, prior to the sale of the lands, her consent in writing that her dower interest in them should be sold. The probate court overruled the motions to charge, and the said James H. Jenks duly excepted. On the petition of the widow, the court decreed her a designated amount,

[Jenks v. Terrell, Adm'r.]

in addition to the $200 which she had received from the pur-
chaser, as " an equivalent for her dower interest in said land,"
and allowed the same as a credit to the administrator; and to
this ruling of the court said Jenks excepted.

The said James H. Jenks also contested the item of credit
claimed for moneys paid to the widow, $1011.48; and in sup-
port of the correctness of the item as a credit, the administra-
tor introduced an itemized account of the moneys disbursed by
the widow for said decedent, and examined her as a witness.
The opinion does not render it necessary to set out her evi-
dence. The bill of exceptions recites that "James H. Jenks
objected to the admission of the account of Mrs. Breedlove,
offered by the administrator in support of" said item, "and ob-
jected separately to each separate sentence of Mrs. Breedlove's
testimony in reference to said account, because said account,
and the testimony in reference thereto were illegal, irrelevant
and incompetent testimony, and because the evidence offered
did not show, or tend to show a proper charge against the es-
tate of Joseph Jenks;" and that the "court overruled each of
said several objections, and admitted the evidence; and to the
overruling of each of said objections the said James H. Jenks
separately excepted."

The bill of exceptions further recites that Mrs. Breedlove,
the widow, in her own behalf, after proving a release to her
by several of the heirs of their interest in the estate, founded
on a valuable consideration, was also allowed to read in evi-
dence, against the objection of the said James H. Jenks, two
receipts, purporting to have been signed by him in the presence
of a subscribing witness, for property and money received by
him "from his father's estate," aggregating more than his dis-
tributive share of the balance ascertained to be in the hands of
the administrator for distribution; she testifying that he signed
the receipts in her presence. To this ruling the said contestant
also excepted.

The rulings above noted, with others, are here assigned as
error.

HEFLIN, BOWDEN & KNOX, for appellant.

BRADFORD & BISHOP, contra.

BRICKELL, C. J.—1. It is insisted by the appellant that
the administrator should have been charged with the personal
property owned by the intestate, which passed into the posses-
sion of the widow, and was converted by her before the grant
of administration. The property was, under the statute of
force at the death of the intestate, exempt to the widow and

[Jenks v. Terrell, Adm'r.]

minor children, as its value did not exceed one thousand dollars (Pamph. Acts, 1872–3, p. 64); and she was entitled to retain and use it.

2. The claim to charge the administrator with the rents received by the widow was properly disallowed. These rents (as we understand the bill of exceptions) issued out of the plantation connected with the dwelling in which the intestate resided at his death; and to them the widow was entitled, her dower not having been assigned. The administrator could not have recovered them from her, and can not be charged with them. Nor could he have set them off against any claim or demand of the widow for money she may have expended in paying the debts of the intestate. The statute (Code of 1876, § 2238) confers on the widow the unqualified right to keep possession of the dwelling and plantation connected therewith, until dower is assigned her. The object of the statute is, that free from molestation she may take its rents and profits, until the personal representative, or the heir shall become the actor, and assign to her the dower to which she is entitled.—*Shelton v. Carrol*, 16 Ala. 148. And if those rents had been received by the administrator, the widow could have recovered them from him.—*Perrine v. Perrine*, 35 Ala. 644. Having received them, she was entitled to retain them against any claim he could have preferred. An administrator is authorized to institute proceedings for the assignment of dower to the widow. The authority involves the duty of its exercise whenever, from a deficiency of personal assets to pay debts, there is a necessity for him to intercept and take the rents and profits, or to sell the lands for the payment of debts. And if for a considerable time he should delay the institution of proceedings for the assignment of dower, suffering the widow to remain in the exclusive pernancy of the rents and profits, he would be guilty of laches in the performance of duty, and liable for the loss resulting to those having rights and interests affected.—*Benagh v. Turrentine*, 60 Ala. 557. But there is no room for the imputation of laches to the appellee in this respect. All the rents, except the rent accruing for the current year, had been received by the widow before the grant of administration; and without delay, after obtaining administration, the appellee, before the expiration of the current year and the falling due of the rent, under an order of the court of probate, made sale of the land. The whole duty resting upon him in reference to the lands was performed by the sale, when it was reported to, and confirmed by the court of probate.

3. The court of probate was in error, in decreeing to the widow compensation, or an equivalent for her dower in the lands. The court is not authorized to decree such compensa-

[Jenks v. Terrell, Adm'r.]

tion, except when, before the sale of the lands by the personal representative under the order of the court, the widow files in the office of the judge her consent in writing, that her dower may be sold with the reversion, thereby passing to the purchaser the present as well as the future interest in the lands. Code of 1876, §§ 2469–71; *Bradford v. Bradford,* 66 Ala. 252. The consent was not filed, and if the purchaser has acquired the dower of the widow, it was not by sale made by the administrator. In this connection it is proper to say, that the money paid by the purchaser to induce the widow not to oppose the confirmation of the sale, forms no part of the purchase-money of the lands, and can not be charged to the administrator. The payment may have been gratuitous, without consideration, but it was to the widow, and in pursuance of an agreement with her; and the money now belongs to her, and is no part of the assets for which the administrator ought to account.

4. Whenever an administrator claims a credit for moneys expended, the burden of proving its correctness rests upon him, if a contest arises as to its correctness. If the credit is for the payment of a debt contracted or incurred, or claimed to have been contracted or incurred by the intestate, he must prove it by the same degree of evidence the creditor would have been compelled to produce, if he had been compelled to an action for its recovery.—*Teague v. Corbitt,* 57 Ala. 529. The debt must not only be proved, but also the fact of its payment, if that fact is put in issue. The mere production of a receipt bearing the signature of the person to whom the payment was made, without proof of the signature, is not evidence of payment.—*Savage v. Benham,* 11 Ala. 49; *Gaunt v. Tucker,* 18 Ala. 27. It may be, that, subjected to these rules, there was not sufficient evidence to support each item of the account paid to the widow, Mrs. Breedlove. The contestant, however, made his objection to the account in the form of a general objection to the evidence of Mrs. Breedlove, which the court of probate properly overruled. Such an objection ought not to be entertained, unless the whole evidence to which it is directed, is inadmissible; the court is not bound to take upon itself the duty of separating and distinguishing the parts of the evidence of a witness which may be admissible, from that which is inadmissible. There is some of the evidence of the witness clearly admissible, and this general objection to the whole of it was properly overruled.—1 Brick. Dig. 886, § 1186. There is no force in the suggestion, that, as the widow was not the rightful personal representative when these payments were made, she must be regarded as having paid money voluntarily, without a previous request, and without subsequent ratification,

which she can not recover. It is true, that money paid by one person for the use of another does not necessarily impose a liability upon the latter; for, as is said, one man can not of his own will pay another man's debt without his consent, and thereby convert himself into a creditor. But the widow, in making these payments, assumed the duty and responsibility of a rightful representative, and, strictly speaking, converted herself into an executor *de son tort*. While such an executor can not acquire any benefits for himself, yet, he *is protected in all acts, not for his own benefit, which the rightful representative could and ought to have done.—Brown v. Walter*, 58 Ala. 310; *Glenn v. Smith*, 20 Am. Dec. 452. If the debts paid by the widow were just and subsisting demands which the rightful representative ought to have paid, she is entitled to stand in the place of the creditor to whom the payments were made, and was properly reimbursed by the appellee.

5. The instruments purporting to be receipts given by the contestant to the widow bear the attestation of a subscribing witness, who was not produced, nor was an account given for his absence. The attesting witness to any species of writing must be called, or his absence accounted for, before other evidence of execution is admissible.—1 Greenl. on Ev. § 569.

For the errors noticed, the decree of the court of probate is reversed, and the cause remanded.